**ENGINEERING TECHNOLOGY ANA- LYSTS, INC., Plaintiff-Appellee,**

v.

**ROBRAY OFFSHORE DRILLING COM- PANY, LTD., Defendant-Appellant.**

No. 79–1749
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1980.

Rehearing Denied March 25, 1980.

Sam Dawkins, Jr., Houston, Tex., for defendant-appellant.

Edwin F. Fitzgerald, Houston, Tex., for plaintiff-appellee.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

HENDERSON, Circuit Judge.

In this diversity action, Engineering Technology Analysts, Inc. (ETA) brought suit in the United States District Court for the Southern District of Texas against Ro-

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

bray Offshore Drilling Company, Ltd. (Robray) to collect a balance due on account for services growing out of a written contract, and design fees which were allegedly due under the contract. Robray filed a counterclaim for breach of contract and to recover usury penalties as provided by Texas law.

On Robray's motion and supplemental motion for summary judgment, the district court found that ETA's acceptance and cashing of a check sent by Robray in settlement of the disputed statement of account constituted an accord and satisfaction, that Robray owed ETA $20,000.00 for design rights, and that Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 precluded Robray's recovery of usury penalties. Robray appeals from that portion of the judgment which denied its counterclaim for usury penalties. We reverse.

ETA is a Texas corporation having its principal place of business in Houston, and Robray is a foreign corporation with its principal office in Singapore. On March 27, 1973, ETA and Robray entered into a written contract whereby ETA was to design for Robray a mobil self-elevating offshore drilling rig. The contract provided that ETA would own twenty percent of the design and Robray eighty percent, but that Robray would have the option to purchase ETA's design rights for $20,000.00 at any time prior to the completion of the first unit.

In April, 1975, a dispute arose over the accuracy of the monthly statements of account. After much correspondence between the parties, Robray's vice president of finance met with officials of ETA in September, 1975, and tendered a $20,000.00 check in payment of Robray's option to purchase ETA's interest in the rig design. This offer was refused by ETA and the parties were unable to resolve their dispute as to the correct balance of account. ETA filed suit on October 1, 1975.

In a letter dated October 6, 1975, Robray's attorney mailed two checks to ETA. One check was for $35,157.72 and was in payment of the statement of account dated September 15, 1975, less adjustments for two disputed invoices and the interest charged by ETA on the open account, and including a $4,000.00 retainer fee for the month of September. The other, in the amount of $20,000.00, represented a second attempt by Robray to exercise its option to buy ETA's design rights. The $35,157.72 check was cashed by ETA's Secretary-Treasurer. However, ETA again returned the $20,000.00 check, claiming that Robray had breached the contract by failing to make timely payments and hence the option to acquire ETA's design rights was no longer of any force and effect.

Thereafter ETA continued for twelve months to bill Robray for the monthly $4,000.00 retainer fee and to accept payment of such fees. On September 23, 1976, ETA sent Robray a "Statement of Account as of September 8, 1976." This statement of account charged Robray interest of one percent per month on the previous month's unpaid balance of principal and interest, or $2,409,617.00. The contract contained no provision for payment of interest for past due amounts.

The issue on appeal is whether the district court properly construed the Texas usury statutes in denying Robray's counterclaim for the recovery of usury penalties. We conclude that the court's interpretation of these statutes, and of Tex.Rev.Civ.Stat. Ann. art. 1302–2.09 (Cum.Supp.1963–78) in particular, was erroneous.

As a basic premise, interest in excess of ten per cent per annum is usurious under Texas law.[1] Where the parties have not agreed on a rate of interest, six percent per annum is the allowable rate.[2] The penalties

---

1. Tex.Rev.Civ.Stat.Ann. art. 5069–1.02:
   Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All

contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle.

2. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03:

for usury are imposed by Tex.Rev.Civ.Stat. Ann. art. 5069–1.06, which provides in part:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

The Supreme Court of Texas recently held that the phrase "contracts for, charges or receives" contained in Article 5069–1.06 is to be read disjunctively, and "only one such condition need occur to trigger penalties; either a contract for, a charge of *or* receipt of usurious interest." *Windhorst v. Adcock Pipe and Supply,* 547 S.W.2d 260, 261 (Tex.1977). Thus, in *Windhorst,* a retailer who unilaterally charged to its customer's open account a 1½ percent per month finance charge was liable under the statute, even though the customer did not agree to pay and never did pay the charge. *See also Houston Sash and Door Co., Inc. v. Heaner,* 577 S.W.2d 217 (Tex.1979).

█ By virtue of this authority, it seems that ETA should have incurred penalties under the statute in that it unilaterally charged Robray interest in excess of six percent per annum. However, the district court applied Tex.Rev.Civ.Stat.Ann. art. 1302–2.09, and in so doing held that ETA's otherwise usurious interest charges did not subject it to penalties. Article 1302–2.09 reads, in pertinent part, as follows:

Notwithstanding any other provision of law, corporations, domestic or foreign, *may agree to and stipulate for* any rate of interest as *such corporation may determine,* not to exceed one and one-half percent (1½%) per month, on any bond, note,

debt, contract or other obligation of such corporation under which the principal amount is Five Thousand Dollars ($5,000) or more, or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5,000), or on any extension or renewal thereof, and in such instances, the claim or defense of usury by *such corporation* . . . is prohibited . . . (emphasis added).

Robray maintains, quite reasonably, that the district court's construction of this statute, in conjunction with its specific finding that the contract contained no provision for the payment of interest, was error. This assertion is supported by recent Texas case law. In *Houston Sash and Door Co., Inc. v. Heaner, supra,* the creditor charged interest at the rate of twelve percent per annum on its corporate debtor's open account. The Texas Supreme Court upheld the determination of the court of civil appeals that the creditor was subject to the penalty provisions of Article 5069–1.06 since it had not shown that the corporation had agreed to pay interest on the open account. Similarly, in *Carr Well Service, Inc. v. Skytop Rig Co.,* 582 S.W.2d 500 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.), the court of civil appeals specifically held that Article 1302–2.09 does not control in cases where the corporate debtor did not agree to the high rate of interest. These decisions are sound and are logically based on the literal language of the statute. Therefore, we hold that the district court erred in applying Article 1302–2.09 so as to preclude Robray's recovery of usury penalties.[3]

In anticipation of this decision, ETA has limited its argument on appeal to its assertion that the accord and satisfaction eliminated not only the principal debt, but also

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made.

3. Robray acknowledges that ETA is no longer a viable company (all of its assets having been sold by the Small Business Administration), and that any recovery by Robray will only serve to offset the $20,000.00 Robray owes to ETA as payment for the design rights.

any usury claim which Robray might otherwise have had. Since the district court never reached the question of the effect of the accord and satisfaction on the usury claim, the parties may pursue this point before the district court on remand. The portion of the court's judgment denying the appellant's counterclaim for usury is reversed insofar as it is based on the applicability of Tex.Rev.Civ.Stat.Ann. art. 1302–2.-09, and the case is remanded for such other proceedings as may be required.

REVERSED AND REMANDED.